UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

PETER WLASIUK,

                        Petitioner,

                                                    9:17-CV-0972
v.                                                  (MAD/ML)


JOSEPH NOETH, Superintendent,

                        Respondent.
_____

APPEARANCES:                                        OF COUNSEL:

JUSTIN C. BONUS ATTORNEY AT LAW                     JUSTIN C. BONUS, ESQ.
  Counsel for Petitioner
118-35 Queens Blvd., Suite 400
Forest Hills, New York 11375


LETITIA A. JAMES                                    MICHELLE MAEROV, ESQ.
New York State Attorney General                     Assistant Attorney General
  Counsel for Respondent
28 Liberty Street
New York, New York 10005

MIROSLAV LOVRIC, United States Magistrate Judge

## REPORT and RECOMMENDATION

Currently before the Court in this habeas corpus proceeding filed by the petitioner, Peter

Wlasiuk ("Petitioner"), pursuant to 28 U.S.C. § 2254, is a referral to the undersigned for a report

and recommendation from United States District Court Judge Mae A. D'Agostino regarding

Plaintiff's Amended Petition.  (Dkt. Nos. 15, 42.)   Petitioner challenges a 2012 jury verdict in

New York State Supreme Court County of Chenango, convicting him of second-degree murder

in connection with the death of his wife.  (*See generally* Dkt. No. 15.)  For the reasons set forth

below, the undersigned recommends that the Amended Petition be denied.

## I.    SUMMARY BACKGROUND

Before Petitioner's conviction in 2012, Petitioner was twice tried and convicted for the

same crime, first in 2003, and again in 2008.  *See People v. Wlasiuk ("Wlasiuk III")*, 136 A.D.3d

1101, 1102, n.1 (N.Y. App. Div. 3d Dep't 2016) (noting that Petitioner's previous convictions

were reversed by state appellate court); *see also People v. Wlasiuk ("Wlasiuk II")*, 90 A.D.3d

1405 (N.Y. App. Div. 3d Dep't 2011); *People v. Wlasiuk ("Wlasiuk I")*, 32 A.D.3d 674 (N.Y.

App. Div. 3d Dep't 2006), leave to appeal dismissed 7 N.Y.3d 871 (2006).  As succinctly set

forth by the New York State Supreme Court, Appellate Division Third Judicial Department

("Appellate Division"), which affirmed the 2012 conviction, the substantive findings against

Petitioner are as follows:

> In the early morning hours of April 3, 2002, the Chenango County
> Sheriff's Department responded to a report that a motor vehicle had
> crashed into Guilford Lake in Chenango County.  At the scene,
> [Petitioner] informed first responders that the victim had swerved to avoid
> a deer and, as a result, had accidentally driven his pick-up truck into the
> lake.  [Petitioner] asserted that he had managed to escape from the vehicle,
> but had been unsuccessful in his attempts to drag the victim to the surface
> after the vehicle submerged.  The victim's body was ultimately recovered
> from the bottom of the lake and, despite efforts to resuscitate her at the
> scene, she was pronounced dead upon her arrival at the emergency room.
> The ensuing investigation revealed evidence that contradicted
> [Petitioner's] version of events and also implicated [Petitioner] as having
> murdered the victim at their home and staged a motor vehicle accident to
> cover up his crime.  At the close of the third trial, [Petitioner] was again
> convicted as charged.  [Petitioner] was sentenced to a prison term of 25
> years to life.

*See Wlasiuk III*, 136 A.D.3d at 1101-1102.

II.     **PROCEDURAL HISTORY**

     A.     **New York State Proceedings**

          1.     **Petitioner's Previous Convictions and Successful Appeals**

On January 17, 2003, Petitioner was convicted of murder in the second-degree and sentenced to twenty-five years to life in prison ("First Conviction"). *Wlasiuk I*, 32 A.D.3d at 674-75. The Appellate Division reversed the First Conviction, stating that "the cumulative effect of a litany of errors deprived [Petitioner] of a fair trial." *Id.* at 675. The Appellate Division reviewed the introduction of "prior bad acts" relative to the "prosecutorial theory [] that the victim's murder was the culmination of an escalating pattern of domestic violence perpetrated by [Petitioner]." *Id.* at 676. The Appellate Division acknowledged that "where inordinate attention is focused on an accused's prior abusive conduct against the victim, there exists potential that jury will afford evidence undue weight[.]" *Id.* at 678 (citations omitted). The Appellate Division determined that, in Petitioner's case, "the potential for prejudice may have been further exacerbated by the repeated presentation of prior bad act evidence through multiple witnesses[.]" *Id.* (citations omitted).

The Appellate Division also found several instances of improper hearsay evidence, including the victim's diary entries and letters detailing her troubled relationship with Petitioner, and a "submerged motor vehicle study" that was principally relied upon—albeit not authored—by the State's expert witness. *Id.* at 679-681. Furthermore, the Appellate Division found that "the prosecutor repeatedly expressed a personal opinion concerning the merits of particular

evidence . . . , disparaged defendant, characterized his testimony and that of his witnesses as 'lies' . . . , and maligned defense counsel and his arguments." *Id.* at 681.

Following the reversal of the First Conviction, the State was granted permission to resubmit the murder charge to a grand jury, and, following a jury trial in 2008, Petitioner was convicted for the second time ("Second Conviction"). *Wlasiuk II*, 90 A.D.3d at 1405. The Appellate Division reversed the Second Conviction, finding that Petitioner "received ineffective assistance of counsel." *Id.* at 1407. The Appellate Division found that Petitioner's counsel unreasonably "(1) failed to join in the prosecutor's request that juror No. 5 be discharged for cause once it became clear that the juror had committed misconduct in obtaining his seat on the jury, and (2) introduced evidence that this [c]ourt previously held to be unduly prejudicial, inadmissible hearsay." *Id.* at 1407-1408. More specifically, the juror in-question failed to disclose his prior relationships with multiple witnesses and the victim, and later admitted that he was interviewed by police during the initial investigation. Furthermore, Petitioner's counsel not only failed to oppose introduction of the victim's diary entries—the same entries that lead to the First Conviction's reversal—but also consented to their admission without a limiting instruction. *Id.* at 1412-1413. In fact, following the Second Conviction, "juror No. 5 gave television interviews explaining that he convinced 'three holdouts' to vote guilty based upon the diary entries[.]" *Id.* at 1413.

### 2.    Petitioner's 2012 Conviction and Unsuccessful Appeal

Petitioner was tried and convicted for the third time in 2012. *Wlasiuk III*, 136 A.D.3d at 1101. Petitioner appealed to the Appellate Division, asserting, in pertinent part, that: (1) "because the People's theory that he smothered the victim to death and then staged a motor vehicle accident to cover up his crime was pure speculation, the verdict was against the weight of

4

the evidence"; (2) "the prosecutor's improper comments during summation resulted in an unfair trial"; and (3) the trial court "should have granted his request for a wholly circumstantial evidence charge and that the court's failure to give such an instruction deprived him of a fair trial."[1] *Id.* at 1102-1104.

In analyzing Petitioner's initial weight of the evidence argument, the Appellate Division acknowledged that "a contrary verdict would not have been unreasonable, considering that the jury could have believed [Petitioner's] version of events[.]" *Wlasiuk III*, 136 A.D.3d at 1102. Nonetheless, the court found that:

> [Petitioner's] contradictory statements to law enforcement personnel and others, the physical evidence concerning the victim's hair and plant material, the testimony concerning an argument between [Petitioner] and the victim on the night of the victim's death, the testimony of the People's accident reconstruction expert, and the findings by the forensic pathologist who performed the autopsy on the victim provided ample evidence that [Petitioner] intentionally caused the victim's death.

*Id.* at 1102-1103.  The court further stated that "[v]iewing the evidence in a neutral light and according deference to the jury's ability to 'view the witnesses, hear the testimony and observe demeanor, we defer to [its] credibility determination and conclude that defendant's conviction[] [was] not against the weight of the evidence[.]" *Id.* at 1103 (cleaned up).

Additionally, the Appellate Division was unpersuaded by Petitioner's argument that "the prosecutor's improper comments during summation resulted in an unfair trial." *Wlasiuk III*, 136

---

[1]    Petitioner also asserted a *Molineux* challenge relative to certain evidence of prior bad acts, which the court found to be unpreserved for appellate review. *Id.* at 1105.  Under New York law, much like Federal Rule of Evidence 404, evidence of prior bad acts is generally inadmissible; however, an exception known as "*Molineux* Rule" permits such evidence during the prosecution's case-in-chief if it is probative of a relevant and material issue other than the defendant's propensity to commit the crime charged.  *See People v. Resek*, 3 N.Y.3d 385 (N.Y. 2004); *People v. Molineux*, 168 N.Y. 264 (N.Y. 1901).

A.D.3d at 1103.  More specifically, the Appellate Division noted that the trial court had

"sustained most of [Petitioner's] objections, admonished the prosecutor outside the presence of

the jury for improperly 'vouch[ing] for the witnesses and suggest[ing] that [there was] a

community effort' to prosecute [Petitioner][.]"[2]  (*Id.*)  The court viewed such remarks "as a fair

response to [Petitioner's] summation wherein counsel suggested that the People's witnesses were

tailoring their testimony and possibly colluding." *Id.* (collecting cases).  The Appellate Division

further noted that, as remedial measure, the trial court "emphasized to the jurors during its charge

that it was their 'recollection of the facts in evidence [that was] controlling[,] not what either

attorney ha[d] stated during their summations." *Id.*  On the whole, the Appellate Division

determined that "the prosecutor's improper comments were not pervasive, and a guilty verdict

would have been likely in their absence" and thus "did not rise to such a level to deprive

[Petitioner] of a fair trial." *Id.* at 1103-1104 (collecting cases).

Finally, the Appellate Division found no error in rejecting Petitioner's "request for a

wholly circumstantial evidence charge[.]" *Wlasiuk III*, 136 A.D.3d at 1104.  During the charge

conference at trial, "defense counsel indicated that [Petitioner] wanted a 'full circumstantial

evidence charge' read to the jury" and disagreed with the trial court's determination that direct

evidence had been presented. *Id.*  Ultimately, the trial court "instructed the jury as to the

difference between direct and circumstantial evidence, set forth the legal definitions of both and

never told the jury whether or not either type of evidence was present." *Id.*  On review, the

Appellate Division noted that the forensic pathologist's testimony "that the victim died of

asphyxiation 'due to smothering' and not from an accidental drowning" constituted direct

---

[2]	For instance, the prosecutor characterized witnesses as "good men and women,"
"interested," and "concerned citizens," in addition to invoking the word "community." *Id.* at
1103.

evidence, but that "[i]n any event, regardless of whether the pathologist's testimony constitutes direct evidence, a review of the jury instructions reveals that County Court properly instructed the jury with respect to circumstantial evidence despite its earlier indication that it would not do so." *Id.*

On April 15, 2016, the New York State Court of Appeals denied Petitioner leave to appeal the lower court's decision. *People v. Wlasiuk*, 27 N.Y.3d 1009 (2016).

### B.    Federal Habeas Corpus Proceeding and Petition

Petitioner initially commenced this proceeding on March 20, 2017, in the United States District Court Western District of New York, with the filing of a "motion for extension of time to file a petition for a writ of habeas corpus." (Dkt. No. 1.) On July 5, 2017, while Petitioner's motion remained pending, he filed a verified petition with an accompanying memorandum of law, exhibits, and an application to proceed *in forma pauperis*. (Dkt. Nos. 4-5.) Thereafter, the case was transferred to this Court on August 4, 2017. (*See* Dkt. No. 6.) Following transfer, United States District Judge Mae A. D'Agostino dismissed the case, but permitted Petitioner leave to refile his claims. (Dkt. No. 9.) Upon refiling, Judge D'Agostino granted Petitioner's *in forma pauperis* application, granted Petitioner's motion to amend his petition, and directed the Clerk of the Court to docket Petitioner's Amended Petition. (Dkt. No. 14.)

Petitioner asserts that his conviction should be reversed for the following five reasons: (1) the evidence was legally insufficient to convict him; (2) the trial court improperly denied Petitioner's total circumstantial evidence charge; (3) the prosecutor engaged in misconduct during closing arguments that deprived him a fair trial; (4) the trial court permitted unduly prejudicial testimony regarding Petitioner's relationship with the victim and her family; and (5)

the trial court improperly denied Petitioner's request for the appointment of a special prosecutor. (Dkt. No. 15 at 17-23.)

More specifically, with respect to his first argument, Petitioner asserts that "the speculative nature of the People's theory is that Petitioner smothered his wife to death; the evidence is legally insufficient and the verdict is against the weight of the evidence." (*Id.* at 17.) Petitioner's chief contention is that Dr. James Terzian ("Dr. Terzian"), a medical examiner who initially determined "that the victim had died accidentally by drowning after an automobile accident," changed his conclusion after completing a second autopsy, despite finding "no new or additional injuries, or any new additional medical findings that would support a different conclusion[.]" (*Id.* at 18.) Petitioner contends that Dr. Terzian's conclusion changed from "accidental drowning" to "homicide by smothering" due to "the presence of burdock burrs in [the victim's] hair at the time of her death[,]" which supports the People's theory that "the death did not occur in the water[.]" (*Id.* at 19.) Petitioner states that Dr. Terzian's conclusion was not based on any autopsy findings, but rather it was "due to the prosecutor's convincing" that no burdock burrs existed at the scene. (*Id.* at 20.)

With respect to Petitioner's second argument, Petitioner argues that the trial court denied him "a fair trial by denying his request to charge the jury regarding the People's burden of proof in a case resting entirely upon circumstantial evidence and instructing that there was both direct and circumstantial evidence, when there was no direct evidence of guilt." (Dkt. No. 15 at 20.) More specifically, Petitioner contends Dr. Terzian's testimony as to how the victim died was not "direct evidence connecting [P]etitioner to the alleged crime." (*Id.*) Petitioner again asserts that "after speaking with the D.A., Dr. Terzian changed his findings to death by strangulation." (*Id.*)

With respect to his third argument, Petitioner asserts that "the People's improper comments vouching for the credibility of their witnesses, invoking sympathy for the decedent, denigrating defense counsel, assuming facts not in evidence and implying that the community favors a guilty verdict, deprived Petitioner of a fair trial." (Dkt. No. 15 at 21.) Petitioner requests that the Court review the trial transcript pages containing Chenango County District Attorney Joseph A. McBride's summation, which purportedly includes "no less then [sic] 17 objections and a move for dismissal in response to D.A. McBrid's [sic] false accusations that Petitioner, with respect to the [P]eople's theme of 'setting up' everyone in the community including McBride himself and the jury specifically, as well as other improper statements." (*Id.* at 22.) Petitioner also states that "D.A. McBride had been warned, admonished and overruled throughout all three (3) trials for his totally unnecessary comments[.]" (*Id.* at 21.)

With respect to his fourth argument, Petitioner asserts that "the trial court denied [him] a fair trial by allowing the prosecution to admit testimony from the victim's family members that Petitioner caused estragement [sic] of his wife from them, which was irrelevant to any material issue in the case." (Dkt. No. 15 at 22.) While Petitioner acknowledges that the Appellate Division "rendered this issue unpreserved," he requests that "this Court consider this issue as a whole or as a part of the improper summation claim herein." (*Id.*)

Finally, with respect to his fifth argument, Petitioner states that the trial court erroneously refused to dismiss the indictment and "disqualify the District Attorney from prosecuting the case, as the First Assistant District Attorney, a blood relative of the decedent and her mother, and while employed in that capacity, represented the estate and the mother of the decedent adversely to Petitioner's interest." (Dkt. No. 15 at 22.) More specifically, Petitioner states that

> Working as one of three (3) ADA employees in Chenango County, Mr. Dunshee would make appearances in the Court room throughout the

9

> [P]etitioner's trial, only to whisper in the ear of D.A. McBride, and then taking child custody of [P]etitioner's children was especially disturbing. Each time ADA Mr. Dunshee came into the Courtroom, it was known by all that he was a relative of [P]etitioner's wife, (the Victim), the impropriety of Stephen Dunshee being the First Assistant District Attorney in the Chenango County District Attorney's Office . . . did create a Conflict of Interest enough to deny Petitioner his right to Due Process of Law and right to fair trial.

(*Id*. at 23.)

### C.    Respondent's Answer and Memorandum of Law

On February 13, 2018, Respondent filed an answer and an accompanying memorandum of law.  (*See* Dkt. Nos. 18-19.)

With respect to Petitioner's first argument regarding the legal sufficiency of the evidence, Respondent argues that it is (a) procedurally barred, and (2) in any event, meritless.  (Dkt. No. 18 at 17-25.)  Respondent asserts that Petitioner "did not raise a legal sufficiency challenge to his conviction on direct appeal" and that "he argued only that the Appellate Division should exercise its discretionary power under state law to 'set aside the verdict as against the weight of the evidence.'"  (*Id.* at 18.)  Respondent contends that a "weight-of-the-evidence claim" is not the same as a "constitutional sufficiency claim" for exhaustion purposes.  (*Id.*)  In any event, Respondent argues that Petitioner's insufficiency claim is substantively meritless because "the evidence was easily more than sufficient for a rational juror to conclude that petitioner killed Patty[—his late wife—]in the manner described by the People's expert Dr. Terzian and that he intended to cause her death."  (Dkt. No. 18 at 23.)

With respect to Petitioner's second argument, Respondent asserts that Petitioner's "jury instruction claim is not cognizable and, to the extent it raises a federal claim, it is meritless." (Dkt. No. 18 at 25.)  Respondent contends that insofar as Petitioner claims he was entitled to a "wholly circumstantial evidence" or "moral certainty" charge, such a claim "is not cognizable on

10

federal habeas review." (*Id.* at 25-26.) Notwithstanding, Respondent argues that, even "[c]onstruing [P]etitioner's claim liberally to assert a due process violation[,]" the at-issue instructions on direct and circumstantial evidence were proper, and thus the Appellate Division's ruling was not "contrary to, or an unreasonable application of, clearly-established Supreme Court law." (*Id.* at 27-28.)

With respect to Petitioner's third argument, Respondent asserts that counsel's summation remarks did not prejudice Petitioner in violation of his due process rights, or any other constitutional right. (Dkt. No. 18 at 29.) Respondent asserts that the Appellate Division applied the appropriate standard in reviewing the alleged misconduct and correctly noted that the comments "were a fair response to [P]etitioner's summation in which counsel 'suggested that the People's witnesses were tailoring their testimony and possibly even colluding.'" (*Id.* at 30 (quoting *Wlasiuk III*, 136 A.D.3d at 1103)). Moreover, Respondent states that there is nothing in the record showing that "the prosecutor discussed facts not in evidence." (*Id.* at 31.) Respondent identifies one point wherein "defense counsel objected to the prosecutor's recollection of the evidence, the court agreed with the prosecutor." (*Id.*) In any event, Respondent states that the trial court repeatedly "stressed to the jury that the parties' summations were 'not evidence and may not be considered as evidence,' and that 'it is your recollection of the evidence that is controlling, not the recollection of either attorney.'" (*Id.* at 31-32.)

With respect to Petitioner's fourth argument, Respondent asserts that "[t]his claim must be denied because the Appellate Division rejected the claim as unpreserved," and that "[i]n any event, the claim raises no colorable issue of federal law." (Dkt. No. 18 at 35.) Respondent notes that defense counsel "conceded" that the testimony proffered was "probative, relevant and material." (*Id.* (internal quotation omitted)). In addition, Respondent argues that it was not error

11

to admit the testimony and even if it was, it did not rise to the level of a denial of due process. (*Id*. at 38-40.)

With respect to Petitioner's fifth argument, Respondent argues that the lower court correctly denied Petitioner's "interested prosecutor" claim, and, in any event, federal habeas relief is unavailable for such a claim. (Dkt. No. 18 at 40.) Respondent states that the attorney in question represented the estate and the victim's mother "prior to becoming a full-time prosecutor in 2008, over four years before trial." (*Id*. at 41.) Moreover, Respondent contends that the attorney "had not participated in [P]etitioner's previous trials and had never prosecuted [P]etitioner while representing any private interests adverse to him." (*Id.*) Notwithstanding, Respondent argues that "[t]he Supreme Court has never found a violation of a criminal defendant's constitutional rights where, as [P]etitioner claims here, one attorney in the office prosecuting him was related to the victim or had previously represented the victim's interest." (*Id.*) Based on the lack of any contrary authority, Respondent contends that the Appellate Divisions' "rejection of the claim cannot be contrary to clearly-established federal law." (*Id*. at 42 (citations omitted)).

### D.    Petitioner's Traverse

To date, Petitioner has not filed a traverse brief. (*See generally* docket sheet.)

## III.    LEGAL STANDARDS

### A.    Standard Governing Review of a *Habeas Corpus* Petition

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), a federal court may grant habeas corpus relief with respect to a claim adjudicated on the merits in state court only if, based upon the record before the state court, the adjudication of the claim (1) was contrary to, or involved an unreasonable application

of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citing 28 U.S.C. § 2254(d)); *Premo v. Moore*, 562 U.S. 115, 120-21 (2011); *Thibodeau v. Portuondo*, 486 F.3d 61, 65 (2d Cir. 2007) (Sotomayor, J.).

The AEDPA "'imposes a highly deferential standard for evaluating state-court rulings' and 'demands that state-court decisions be given the benefit of the doubt.'" *Felkner v. Jackson*, 562 U.S. 594, 598 (2011) (per curiam) (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010)); *accord, Cullen*, 563 U.S. at 181. Federal habeas courts must presume that the state court's factual findings are correct "unless applicants rebut this presumption with 'clear and convincing evidence.'" *Schriro v. Landrigan*, 550 U.S. 465, 473-74 (2007) (quoting 28 U.S.C. § 2254(e)(1)); *see also Boyette v. Lefevre*, 246 F.3d 76, 88 (2d Cir. 2001). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro*, 550 U.S. at 473 (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)).

As required by Section 2254, on federal habeas review, a court may only consider claims that have been adjudicated on the merits by the state courts. 28 U.S.C. § 2254(d); *Cullen*, 563 U.S. at 181; *Washington v. Schriver*, 255 F.3d 45, 52-55 (2d Cir. 2001). The Second Circuit has held that, when a state court adjudicates a claim on the merits, "a federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim—even if the state court does not explicitly refer to either the federal claim or to relevant federal case law." *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001).

## B.    Legal Standard Governing Exhaustion of Remedies

Before seeking federal habeas relief, a petitioner must exhaust available state remedies or establish either an absence of available state remedies or that such remedies cannot adequately protect his rights. *Aparicio v. Artuz*, 269 F.3d 78, 89 (2d Cir. 2001) (quoting 28 U.S.C. § 2254(b)(1)); *Ellman v. Davis*, 42 F.3d 144, 147 (2d Cir. 1994). The exhaustion doctrine recognizes "respect for our dual judicial system and concern for harmonious relations between the two adjudicatory institutions." *Daye v. Att'y Gen. of N.Y.*, 696 F.2d 186, 191 (2d Cir. 1982); *see also Galdamez v. Keane*, 394 F.3d 68, 72 (2d Cir. 2005) ("Comity concerns lie at the core of the exhaustion requirement."). Although both federal and state courts are charged with securing a state criminal defendant's federal rights, the state courts must initially be given the opportunity to consider and correct any violations of federal law. *Galdamez*, 394 F.3d at 72 (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999)). "The chief purposes of the exhaustion doctrine would be frustrated if the federal habeas court were to rule on a claim whose fundamental legal basis was substantially different from that asserted in state court." *Daye*, 696 F.2d at 192 (footnote omitted).

This exhaustion requirement is satisfied if the federal claim has been "fairly present[ed]" to the state court. *Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)). A claim has been "fairly presented" if the state court was apprised of "both the factual and the legal premises of the claim [the petitioner] asserts in federal court." *Daye*, 696 F.2d at 191. Thus, "the nature or presentation of the claim must have been likely to alert the court to the claim's federal nature." *Id.* at 192.

Significantly, "[t]he exhaustion doctrine 'requires only that a petitioner present his claim once on direct or collateral review.'" *Salahuddin v. Strack*, 97-CV-5789, 1998 WL 812648, at

*5 (E.D.N.Y. Aug. 12, 1998) (quoting *Sanford v. Senkowski*, 791 F. Supp. 66, 69 (E.D.N.Y.

1992)); *see Fielding v. LeFevre*, 548 F.2d 1102, 1106 (2d Cir. 1977) ("In order to meet the

exhaustion requirement, a petitioner must have presented his claim to the state courts at least

once, on direct or collateral review."). "Therefore, even if a claim is not raised at trial or on

direct appeal, a claim pursued throughout a full round of state post-conviction proceedings is

exhausted." *Salahuddin*, 1998 WL 812648, at *5 (citing, *inter alia, Castille v. Peoples*, 489 U.S.

346, 350-51 (1989)); *see also Harvey v. Portuondo*, 98-CV-7371, 2002 WL 2003210, at *5

(E.D.N.Y. Aug. 5, 2002).

## IV.    ANALYSIS[3]

### A.    The Evidence Was Legally Sufficient

After carefully reviewing the record, assuming *arguendo*, that Petitioner raised a legal

sufficiency claim for the purposes of exhaustion vis-à-vis his weight-of-the-evidence claim, *see*

*Parker v. Ercole*, 666 F.3d 830, 833 (2d Cir. 2012), I, nonetheless, find that—for the reasons

stated in Respondent's memorandum of law (Dkt. No. 18 at 22-25)—this claim substantively

lacks merit because a rational trier of fact could have found beyond a reasonable doubt that

Petitioner committed second degree murder.[4]  The following is intended to supplement, not

supplant, those reasons.

---

[3]    As the New York State Court of Appeals affirmed the Appellate Division's decision
without explanation, the undersigned has reviewed the last state court decision that provided a
rationale.  *See Wlasiuk*, 27 N.Y.3d at 1009; *Willson v. Sellars*, 138 S. Ct. 1188, 1192 (2018)
(holding that a federal habeas court reviewing an unexplained state-court decision on the merits
"should 'look through' the unexplained decision to the last related state-court decision that does
provide a relevant rationale" and "presume that the unexplained decision adopted the same
reasoning," but that "the State may rebut the presumption by showing that the unexplained
affirmance relied or most likely did rely on different grounds than the lower state court's
decision").

[4]    "New York State case law makes clear that its 'legally sufficient evidence standard is
identical to the federal constitutional due process right discuss in *Jackson*." *Nelson v. Lilley*, 21-

"[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).  This is a "highly deferential standard," and the state courts are "given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010).  As such, a petitioner challenging the sufficiency of evidence "bears a very heavy burden." *Einaugler v. Supreme Court of the State of N.Y.*, 109 F.3d 836, 840 (2d Cir. 1997).  Evidence is legally sufficient if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 309, 319 (1979).

In New York, a person is guilty of murder in the second degree when, "[w]ith intent to cause the death of another person, he causes the death of such person or of a third person."  N.Y. Pen. L. § 125.25(1).  The Appellate Division summarized the evidence at trial as follows:

> Here, among other things, [Petitioner's] contradictory statements to law enforcement personnel and others, the physical evidence concerning the victim's hair and plant material, the testimony concerning an argument between [Petitioner] and the victim on the night of the victim's death, the testimony of the People's accident reconstruction expert, and the findings by the forensic pathologist who performed the autopsy on the victim

---

CV-647, 2022 WL 2872648, at *nt. 2 (W.D.N.Y. Jul. 21, 2022) (citations omitted).  However, "[a] federal court must look to state law to determine the elements of the crime." *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999) cert. denied 528 U.S. 1170 (2000).  Furthermore, the Second Circuit has indicated that weight-of-the-evidence claims may exhaust legal sufficiency claims in the federal habeas context. *Liberta v. Kelly*, 839 F.2d 77, 80 n.1 (2d Cir. 1988). Hence, some courts in this district have concluded that "by raising a weight of the evidence claim, petitioners necessarily have raised a sufficiency claim." *Shuler v. Artus*, 15-CV-0399, 2016 WL 698106, at *5 nt. 3 (N.D.N.Y. Feb. 19, 2016) (Hurd, J.) (collecting cases).

provided ample evidence that [Petitioner] intentionally caused the victim's death.

*Wlasiuk I*, 136 A.D.3d at 1102-1103 (footnote omitted).

Relative to Petitioner's chief contention—that Dr. Terzian changed his conclusions based on speculative findings as opposed to any forensic indication—the Court finds that the evidence presented is sufficient, and that the Appellate Division's ruling was not contrary to established law or an unreasonable application of the facts in evidence.  There is no dispute that Dr. Terzian changed his determination based on the presence of burdock burrs in both the victim's hair and the rear truck bed of Petitioner's vehicle.  Although Petitioner claims that this is insufficient evidence in light of the People's prosecutorial theory—namely, that Petitioner smothered the victim behind their home and then transported her body to the lake before staging a drowning accident—this argument concerns a credibility determination, as opposed to whether the evidence was legally sufficient.  *See Shamsuddin v. Smith*, 578 F. Supp. 3d 328, 339 (N.D.N.Y. 2022) (collecting cases) ("A court reviewing a habeas petition may not revisit the fact-finder's credibility determinations.")  For instance, the jury could have chosen to discredit Dr. Terzian's findings and testimony regarding the victim's cause of death, which undisputedly changed as the investigation progressed and as Petitioner became implicated as a suspect.  *See Wlasiuk I*, 136 A.D.3d at 1102-1103.  The jury decided otherwise.  (*Id.*)

In light of the foregoing, it cannot be said that the Appellate Division violated a clearly established law or unreasonably determined the factual record; hence, I recommend that Petitioner's legal sufficiency claim be dismissed.

### B.    The Trial Court Properly Denied Petitioner's Total Circumstances Charge

After reviewing the relevant record excerpts, the undersigned finds that the Appellate Division's ruling regarding the circumstance evidence charge to the jury, was neither contrary to

17

clearly established law nor unreasonable based on the evidence, for the reasons stated in Respondent's memorandum of law.  (Dkt. No. 18 at 25-29.)

A challenge to an allegedly incorrect jury instruction under state law is not in itself a proper basis for federal habeas relief.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Rather, a federal habeas petitioner must demonstrate "not only that the instruction misstated state law[,] but also that the error violated a right guaranteed to him by federal law." *Casillas v. Scully*, 769 F.2d 60, 63 (2d Cir. 1985) (citations omitted).  "The ultimate question is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Medina v. Artus*, 09-CV-1190, 2011 WL 841354, at *8 (N.D.N.Y. Feb. 17, 2011) (M.J. Homer) (quoting *Cupp v. Naughten*, 414 U.S. 141, 146 (1973)), *report and recommendation adopted by* 2011 WL 841312 (N.D.N.Y. Mar. 8, 2011) (Kahn, J.).  As such, "[i]n order to violate due process, the error must be 'sufficiently harmful to make the conviction unfair.'" *Id.* (quoting *Jackson v. Edwards*, 404 F.3d 612, 624 (2d Cir. 2005)).

As Respondent correctly points out, there is no viable constitutional claim based solely on an allegedly improper jury instruction.  (Dkt. No. 18 at 25-26.); *See Estelle*, 502 U.S. at 67-68.  Nonetheless, even when construing Petitioner's contentions as a due process violation, such a claim fails because the purported error was not sufficiently harmful to make the conviction unfair.  Petitioner has provided no indication that the jury would have decided otherwise had a wholly circumstantial evidence charge been made.  *See Blazic v. Henderson*, 900 F.2d 534, 543 (2d Cir. 1990) (rejecting the petitioner's contention that the lack of a circumstantial evidence charge violated due process where there was "no basis to conclude that a jury would have responded differently had the charge been given.").  Therefore, there is no basis to conclude that

its omission "so infected the trial that the resulting conviction violated due process[.]"  *Blazic*,

900 F.2d at 543 (quoting *Cupp*, 414 U.S. at 147).

Accordingly, I recommend that Petitioner's circumstantial evidence charge claim should

be dismissed.

### C.    Prosecution's Comments Were Appropriate Under the Circumstances

After carefully considering the matter, I find that, relative to the prosecutor's remarks, the

Appellate Division did not violate clearly established law or rule in a manner contrary to the trial

record evidence, for the reasons set forth in Respondent's memorandum of law.  (Dkt. No. 18 at

29-34.)

Generally, "[i]nappropriate prosecutorial comments, standing alone, would not justify a

reviewing court to reverse a criminal conviction obtained in an otherwise fair proceeding."

*United States v. Young*, 470 U.S. 1, 11-12 (1985).  Only where such comments "so infected the

trial with unfairness as to make the resulting conviction a denial of due process" may reversal be

warranted.  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citations omitted).  As such,

prosecutorial misconduct claims in the context of a habeas corpus petition are examined

"consider[ing] the record as a whole[.]"  *Jackson v. Conway*, 763 F.3d 115, 146 (2d Cir. 2014).

For instance, "the reviewing court must not only weigh the impact of the prosecutor's remarks,

but must also take into account defense counsel's opening salvo . . . if the prosecutor's remarks

were 'invited,' and did no more than respond substantially in order to 'right the scale,' such

comments would not warrant reversing a conviction."  *Young*, 470 U.S. at 12-13 (quoting *United

States v. Hasting*, 461 U.S. 499 (1983)).

Here, the record shows that during summation defense counsel attacked the credibility of

the People's witnesses, suggesting that they colluded together to setup Petitioner's conviction,

which invited the prosecutor's proportional comments in response. *See Wlasiuk III*, 136 A.D.3d at 1103-1104. Notwithstanding, the trial court properly instructed the jury regarding the evaluation of closing arguments, and expressly stated that summations from counsel are not evidence and may not be considered as much. *Id.* at 1103. In sum, the Appellate Division rendered a decision that considered the record as a whole, and to the extent that any prosecutorial remarks were improper, they were appropriately aimed to "right the scale." *See Young*, 470 U.S. at 12-13 (quotations omitted).

Accordingly, I recommend that Petitioner's claim regarding alleged prosecutorial misconduct be dismissed.

### D.    Testimony From the Victim's Mother and Sister

After carefully considering the matter, I find that, for the reasons stated in Respondent's memorandum of law, the Appellate Division properly determined that Petitioner's request regarding the preclusion of testimony from the victim's mother and sister, was unpreserved. (Dkt. No. 18 at 35-38.)

Moreover, in the alternative, Petitioner's claim lacks merit for the reasons stated in Respondent's memorandum of law. (*Id*. at 38-40.) Federal habeas relief is unavailable to redress state evidentiary errors unless the petitioner "demonstrates that the alleged error violated an identifiable constitutional right, and that the error was 'so extremely unfair that its admission violates fundamental conceptions of justice.'" *Sudler v. Griffin*, 12-CV-367, 2013 WL 4519768, at *3 (N.D.N.Y. Aug. 26, 2013) (Mordue, J.) (quoting *Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir. 1998) (citations omitted)).

It was not error to admit the testimony of Joyce Cardozo or Laurie Cardozo. As Respondent highlighted, defense counsel "conceded" that the testimony proffered was

"probative, relevant and material."  (Dkt. No. 18 at 35 [citing Dkt. No. 20, Attach. 4 at 9].).

Moreover, to the extent that the trial court erred in admitting the testimony of Joyce and Laurie

Cardozo, Petitioner cannot, and does not, show that this error rose to a denial of due process by

(1) providing the basis for the conviction, or (2) removing a reasonable doubt that would have

otherwise existed.

Accordingly, I recommend that Petitioner's claim regarding the testimony of Joyce

Cardozo and Laurie Cardozo be dismissed.

### E.    The Special Prosecutor Request Denial Was Proper

After carefully considering the matter, I reject Petitioner's argument regarding the

interested prosecutor claim, for the reasons stated in Respondent's memorandum of law.  (Dkt.

No. 18 at 40-44.)  The following is intended to supplement, not supplant those reasons.

Notably, the Appellate Division denied Petitioner's contention without discussion.  *See*

*Wlasiuk III*, 136 A.D.3d at 1105.  Accordingly, the undersigned has reviewed the relevant trial

court records, which represent the last related state court ruling on the matter.  *See Willson*, 138

S. Ct. at 1192.  The record shows that on May 15, 2012, the trial court issued a written Decision

and Order denying Petitioner's pre-trial motion seeking to disqualify counsel and appoint a

special prosecutor.  (Dkt. No. 20-1 at 202-212.)  In rendering its findings, the trial court analyzed

Petitioner's allegations to the extent that they were supported by admissible evidence, but found

his submissions did not support disqualification.  (*Id.*)  Based on my review of the record, it

cannot be said that the trial court's decision or the Third Department Appellate Division's

rejection of Petitioner's interested prosecutor claim was contrary to, or an unreasonable

application of, clearly-established Supreme Court law.

As a result, I recommend that Petitioner's claim regarding his "special prosecutor" request be denied.

## V.    CERTIFICATE OF APPEALABILITY

To appeal a final order denying a request by a state prisoner for habeas relief, a petitioner must obtain from the court a certificate of appealability ("COA").  28 U.S.C. § 2253(c)(1)(A); *see also* Fed. R. App. P. 22(b)(1) ("[T]he applicant cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c).").  In the absence of a COA, a federal court of appeals lacks jurisdiction to entertain an appeal from the denial of a habeas petition.  *Hoffler v. Bezio*, 726 F.3d 144, 152 (2d Cir. 2013).  A COA may issue only "if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); *Hoffler*, 726 F.3d at 154.  A petitioner may demonstrate a "substantial showing" if "the issues are debatable among jurists of reason; . . . a court could resolve the issues in a different manner; or . . . the questions are adequate to deserve encouragement to proceed further."[5]  *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983) (quotation marks omitted).

In this instance, I find that jurists of reason would not find it debatable as to whether the petition in this matter is meritorious.  Accordingly, I recommend against the issuance of a COA.

**ACCORDINGLY**, it is

**RECOMMENDED** that the petition be **DENIED and DISMISSED**, and that a certificate of appealability not be issued to Petitioner; and it is further

---

[5]    A similar standard applies when a COA is sought to challenge the denial of a habeas petition on a procedural basis.  *See Slack v. McDaniel*, 529 U.S. 473, 478 (2000) ("[A] COA should issue . . . if the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.").

**ORDERED** that the Clerk of the Court shall file a copy of this Report and Recommendation on the parties.

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>**.  28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).


Dated: January  18 , 2023
       Binghamton, New York


Miroslav Lovric
U.S. Magistrate Judge